James CHLADEK, d/b/a Metro Access, Dynatech Communications, Inc., Entertainment Technologies Ventures, Inc., Info Products, Inc., Health Phone, Inc., Kee–Byrd Productions, Inc., and Annette Brent, d/b/a Info Access, Plaintiffs–Appellants,

v.

VERIZON N.Y. INC. and the Public Service Commission of the State of New York, Defendants–Appellees.

No. 03–7690.

United States Court of Appeals, Second Circuit.

April 12, 2004.

Gerald S. Rourke (Joseph P. Garland, Law Office of Joseph P. Garland, on the brief) New York, NY, for Plaintiff–Appellant James Chladek d/b/a MetroAccess.

Kenneth A. Elan, Law Office of Kenneth A. Elan, New York, NY, for Plaintiffs–Appellants Dynatech Communications, Inc., Entertainment Ventures, Inc., Kee–Byrd Productions, Inc. and Annette Brent d/b/a Info Access.

Guy Miller Struve, Davis Polk & Wardwell, New York, NY, for Defendant–Appellee Verizon New York Inc.

John L. Favreau, Assistant Counsel (Dawn Jablonski Ryman, General Counsel) Albany, NY, for Defendant–Appellee Public Service Commission of the State of New York.

Present: OAKES, STRAUB, Circuit Judges, and POLLACK, District Judge.*

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby **AFFIRMED.**

Plaintiffs–Appellants appeal from the June 4, 2003 Memorandum and Order of the United States District Court for the Southern District of New York (Richard Owen, *Judge*), which granted Defendants–Appellees' motion to dismiss the Amended Complaint. On appeal, Plaintiffs–Appellants argue that the District Court's conclusion that *Evans v. Public Serv. Comm'n,* 287 F.3d 43 (2d Cir.2002) completely disposed of their claims was erroneous because: (1) *Evans* assumed but did not find that the contested order of the Public Service Commission was content-neutral; (2) *Evans* did not address a claim of retaliation; (3) they have sustained injury cognizable under the Communications Act of 1934 and the Telecommunications Act of 1996; and, (4) the "sham exception" to the *Noerr–Pennington* doctrine removes whatever immunity may apply to Defendants–Appellees' allegedly anticompetitive actions. We assume familiarity with the factual background set forth in the detailed decision of the District Court and refer only to those facts necessary to our disposition.

### I.

Plaintiffs–Appellants are information providers ("IPs") that operate pay-per-call information and entertainment services that customers access via the InfoFone telephone service provided by Verizon N.Y. Inc. ("Verizon"). Verizon also provides billing and collection service to the IPs. On July 17, 1998, Verizon instituted proceedings before the Public Service Commission of the State of New York ("PSC") to amend its tariffs to withdraw InfoFone service, including its billing and collection services. The PSC instituted proceedings to investigate Verizon's request, which was contested by several IPs. Verizon and a majority of the IPs reached a settlement of their dispute. By Opinion and Order issued on March 25, 1999 ("Or-

* The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

der"), the PSC adopted the settlement, concluding that it would "serve the public interest and fulfill [the PSC's] statutory obligation to secure adequate service at just and reasonable rates." The Order authorized Verizon to withdraw its Info-Fone billing and collection services on March 24, 2004, following a five-year transition period.

The IPs filed the instant action on March 25, 2002. On April 9, 2002, we issued our opinion in *Evans,* affirming the dismissal of a case brought by another IP who contested the Order on virtually identical constitutional and statutory grounds.

The District Court concluded that dismissal of the IPs' constitutional claims was mandated by *Evans,* because they were "virtually identical" to those dismissed in *Evans.* It concluded that *Evans* also mandated the dismissal of the IPs' statutory claims under the Telecommunications Act because, like Evans, plaintiffs were not telecommunication carriers and the services sought—billing and collection—were not services covered under the Act. With regard to the federal and state antitrust claims, the District Court concluded that the *Noerr–Pennington* doctrine immunized Verizon's actions from antitrust liability, and, alternatively, that the filed tariff doctrine barred the IPs' antitrust claims.

## II.

■ The IPs argue that *Evans* does not mandate dismissal of their First Amendment speech claims because they, unlike the plaintiff in *Evans,* have alleged that the regulation was aimed at suppressing certain types of speech, *i.e.* adult entertainment. Because the Order was enacted to obviate Y2K compliance issues and to increase competitively priced billing and collection services, it is a content-neutral regulation. *See Hill v. Colorado,* 530 U.S. 703, 720, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) ("government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech."); *accord Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 450 (2d Cir.2001). Moreover, because the Order affected all IPs equally, from weather information providers to adult entertainment providers, there is no support for the IPs' contention that the regulation was aimed specifically at adult entertainment providers. The IPs' First Amendment speech claims were, therefore, properly dismissed.

*Evans,* however, did not present a First Amendment retaliation claim. The IPs allege that: (1) troubles with Verizon's call estimates occurred "at some point between 1983 and 1990"; (2) these troubles were discovered in 1996; (3) Verizon's decision to change their switching hardware was "controversial" and resulted in "administrative actions and lawsuits against [Verizon] by several IPs"; (4) problems with Verizon's switching hardware prompted several IPs, including appellants here, to commence litigation against Verizon; (5) the result of at least one of these lawsuits was a PSC order to Verizon to reduce rates "to redress the harms resultant to the IPs from the misconduct of the Company"; (6) "the Company's further motive and purpose in seeking to terminate service to the IPs was retaliation for the IPs [sic] protected activity in petitioning the Government for redress of their legitimate grievances"; and (7) "Upon information and belief, the PSC, as reflected in the March 25 Order, knew or should have known of this retaliatory and content-based motive, and nonetheless approved the termination of service, thereby ratifying the retaliatory and content-based conduct of the Company."

" 'To survive summary dismissal, a plaintiff asserting [a] First Amendment re-

**22**

taliation claim[ ] must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn,* 280 F.3d 98, 106–07 (2d Cir.2001) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). To sustain a claim under 42 U.S.C. § 1983, a plaintiff must "sufficiently allege that the defendant acted under color of state law." *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002) (per curiam), *cert. denied,* 538 U.S. 961, 123 S.Ct. 1750, 155 L.Ed.2d 512 (2003). A private actor, like Verizon here, "acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents. A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (citations and internal quotation marks omitted).

The IPs have alleged no facts that support a claim of retaliation against the PSC; therefore, the retaliation claim against the PSC must be dismissed. With regard to Verizon, the Amended Complaint fails to allege action that can be fairly attributed to a person acting under color of state law as required by § 1983; thus, this claim fails as well. *Cf. Jackson v. Metro. Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477, (1974) (complaint that alleged only that heavily regulated utility elected to terminate service in a manner that the state commission found permissible failed to state § 1983 claim).

The District Court concluded that *Evans* required dismissal of the IPs' claims under the Telecommunications Act, because the IPs are not telecommunications carriers and therefore lacked standing, and the services at issue—billing and collection—were not services covered under the Act. The IPs, unlike the plaintiffs in *Evans,* predicate claims on specific sections of both the Communications Act of 1934 and the Telecommunications Act of 1996. As the District Court properly found, *Evans* requires the dismissal of the IPs' claims made pursuant to the Telecommunications Act of 1996. In addition, the IPs' claims made under §§ 201(b) and 214 of the 1934 Act must be dismissed because the PSC's Order applies only to intrastate services not covered by the 1934 Act.

■ The Communications Act of 1934 does not apply to communications services that are purely intrastate in nature. 47 U.S.C. § 152(b). In *Evans,* we affirmed the District Court's finding that Evans's constitutional claims were barred by the Johnson Act because, as we held in *Evans,* the PSC order applied to purely *intrastate* services. The IPs' claims that they suffered injury from violations of §§ 201(b) and 214 of the 1934 Act are, therefore, without merit because neither of those sections apply to purely intrastate telecommunications services.

Moreover, the FCC has determined that billing and collection services are not "telecommunications services" as defined by Title II of the Communications Act, 47 U.S.C. §§ 201 *et seq. See In re Detariffing of Billing and Collection Servs.,* 102 F.C.C.2d 1150 (1986); *Brittan Communications Int'l Corp. v. Southwestern Bell Tel. Co.,* 313 F.3d 899, 904–05 (5th Cir. 2002), *cert. denied,* 538 U.S. 1034, 123 S.Ct. 2091, 155 L.Ed.2d 1064 (2003); *Int'l Audiotext Network Inc. v. AT & T,* 893 F.Supp. 1207, 1224–25 (S.D.N.Y.1994), *aff'd,* 62 F.3d 69 (2d Cir.1995). Because the IPs seek the continuation of services that are not regulated by either the 1934

or 1996 Act, their claims under both Acts were properly dismissed.

■ Additionally, § 253 of the Telecommunications Act of 1996 prevents states from "prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253. The IPs do not provide telecommunications service as defined by the Act. *See* 47 U.S.C. § 153(46) ("The term 'telecommunication service' means the offering of telecommunications for a fee directly to the public ...."); 47 U.S.C. § 153(43) ("The term 'telecommunications' means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received."). Thus, they are not "telecommunications carrier[s]" under the Act. *See* 47 U.S.C. § 153(44) ("The term 'telecommunications carrier' means any provider of telecommunications services ... A telecommunications carrier shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing telecommunications services ...."). Because the March 24, 1999 Order did not "prohibit[ ] the ability of any entity to provide any interstate or intrastate telecommunications service" it cannot give rise to a cause of action under the 1996 Act. The IPs' claim under 47 U.S.C. § 253 was therefore properly dismissed, although the District Court's reference to "standing" was a misnomer.

The IPs formally withdrew all of their antitrust claims at oral argument, therefore, we have no need to address those claims.

### III.

We have considered all of the IPs' contentions made before this Court in connection with this appeal and have found them to be without merit. The judgment of the District Court is hereby AFFIRMED.